IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| B. MICHAEL ROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 7:15-cv-01586-LSC |
| ) | |
| CATERPILLAR GLOBAL ) | |
| MINING AMERICA LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF OPINION**

## I.   INTRODUCTION

Plaintiff B. Michael Roberts ("Roberts") filed this action against his former employer, Caterpillar Global Mining America LLC ("CGM"), alleging that CGM unlawfully discriminated against him due to his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Alabama Age Discrimination in Employment Act ("AADEA"), Ala. Code § 25-1-20 *et seq.* Roberts also alleges a claim for conversion under Alabama common law. Before this Court is Defendant CGM's motion for summary judgment (Doc. 18), which has been fully briefed and is ripe for decision. For the reasons explained below, Defendant CGM's motion is due to be granted in part.

## II. Factual Background[1]

Roberts was first hired by a company known as Bucyrus International, Inc. ("Bucyrus") on April 7, 2011. When Caterpillar, Inc. ("Caterpillar") acquired Bucyrus in July 2011, CGM[2] was formed as a subsidiary of Caterpillar, and Roberts became a full-time CGM employee. His physical office was located at CGM's Houston, Pennsylvania, facility, although Roberts traveled frequently and often worked remotely. During his employment with CGM, Roberts worked in the Belt Products Group, first as a Product Manager and as of September 1, 2012, as an Industry Product Application Manager. Roberts served in the latter position until his termination on March 20, 2014. As part of his duties, Roberts directly supervised employees Bill Call ("Call"), Terence Johnson ("Johnson"), Jeff Mayer ("Mayer"), Osama "Sam" Rabadi ("Rabadi"), and Danny Sayers ("Sayers"). David Becktel ("Becktel") was Roberts's direct supervisor.

On March 6, 2014, Rabadi complained to CGM's Human Resources Manager for the Houston facility, Tammy Richardson ("Richardson"), that

---

[1] In ruling on a motion for summary judgment, this Court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the . . . motion." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). Thus, if the parties' versions of the facts differ with regard to a particular issue, this Court accepts the nonmoving party's version as true. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

[2] CGM manufactures mining and mining transportation equipment.

Roberts had made an inappropriate threat during a meeting held on February 20 or 21, 2014, in Hillsville, Virginia. According to Richardson,[3] Rabadi was physically present at the meeting with Roberts and Mayer, and the three spoke with supplier Tim Phelps ("Phelps") by telephone to discuss parts manuals for customers. Also according to Richardson, during the meeting, Roberts became angry and stated, "Don't make me go Middle Eastern on you and throw the three of you in a corner and shoot." Although Rabadi understood the statement to be directed to the three subordinates present at the meeting (Rabadi, Mayer, and Phelps), Rabadi felt specifically threatened because he is of Jordanian national origin and his first name is Osama. Richardson observed that Rabadi appeared "nervous and anxious" when recalling the events.

As part of her investigation of the incident, Richardson spoke with Mayer on March 11, 2014. In that telephone call, Mayer informed Richardson that he was present at the meeting and that Roberts was frustrated, but Mayer did not recall Roberts making any inappropriate comments. The next day, Richardson received a voicemail from Mayer, who stated that he wanted to speak with Richardson. When Richardson returned Mayer's phone call, Mayer retracted his earlier statement and

---

[3] There is no deposition, declaration, or other sworn statement from Rabadi in the record. Because Roberts does not appear to dispute that Rabadi made a complaint to Richardson but rather asserts that Rabadi's complaint was false, this Court relies on Richardson's declaration for factual information related to her meeting with Rabadi.

explained that he did hear Roberts make the threatening comment during the meeting but had lied to Richardson the previous day because he feared he would lose his job.

Richardson then spoke with Roberts by telephone on March 13, 2014. Roberts stated that he was present at the employee meeting in Hillsville, but when Richardson asked him if he recalled any inappropriate comments, Roberts replied that he did not know what Richardson was talking about. At an in-person meeting in Houston on March 18, 2014, Richardson asked Roberts if a confrontation occurred during the Hillsville employee meeting. Roberts responded that the only issue at the meeting stemmed from Rabadi's delay in providing spare parts pricing information to a customer. The following day, Richardson informed Roberts that he would be suspended with pay during the remainder of the investigation into Rabadi's complaint. Roberts denied that he had made the inappropriate threat and expressed his willingness to take a polygraph test, but CGM declined.

On March 18 and 19, 2014, Richardson met with the members of CGM's Human Resources management team and explained that an employee had complained that Roberts threatened him at a meeting and that another employee present at the meeting had corroborated the inappropriate statement. Based on this evidence, the team unanimously decided to terminate Roberts's employment with

CGM because Roberts had violated CGM's harassment and workplace violence policies. Richardson and Rachael Reeb ("Reeb"), CGM's corporate Human Resources Manager, called Roberts on March 20, 2014, to inform him of the decision. During this telephone conversation, Roberts claimed that Richardson had not conducted a thorough investigation into the matter by failing to interview Sayers and Johnson, whom Roberts alleged were also present at the meeting. Neither Richardson nor Reeb responded to his claim.

Because Roberts was not permitted to return to his office after his termination, Richardson inventoried the items in the office and arranged for Roberts's personal items to be mailed to his home address in Alabama. Richardson states that all of Roberts's personal items were returned to him, with the exception of a jug of antifreeze and a bottle of champagne that were discarded because she was unable to ship them. Roberts states that he never received the champagne, engineering drafting instruments and simple scales, his Alabama professional engineer stamp, notes and notebooks, colleagues' business cards, and a decanter.

In the year following Roberts's termination, CGM transferred much of the Belt Products Group's operations to another company not affiliated with Caterpillar or CGM. The positions of many of Roberts's coworkers were eliminated, and these individuals, including Rabadi and Mayer, were either

transitioned to the acquiring company or separated as part of a reduction in force. Roberts also claims that Sayers, Johnson, John Kellis, and Denny McCormick, who are all over the age of forty, were laid off the day after he was terminated. On August 15, 2014, fifty-year-old Wilson Tavares ("Tavares") replaced Roberts in his position. On September 16, 2014, Roberts filed an EEOC charge alleging that he was accused of making an inappropriate statement and that he was terminated without severance pay. He received his right-to-sue letter on June 12, 2015. The instant action was filed on September 11, 2015, within the requisite time period.

## III. Standard of Review

A motion for summary judgment is due to be granted upon a showing that "no genuine dispute as to any material fact" remains to be decided in the action and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## IV. Discussion

### A. Age Discrimination

The ADEA[4] prohibits an employer from discharging an individual or "otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment" based on the individual's age. 29 U.S.C. § 623(a)(1). Absent direct evidence of age discrimination, such as specific statements made by the employer's representatives, an ADEA plaintiff may demonstrate circumstantial evidence of disparate treatment through the *McDonnell Douglas* burden-shifting framework. *See Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the aggrieved employee "creates a presumption of unlawful discrimination" by first establishing a prima facie case of age discrimination. *Liebman*, 808 F.3d at 1298. The burden then shifts to the employer "to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (quoting *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012)). If the employer proffers a legitimate,

---

[4] A claim under the AADEA is analyzed under the same evidentiary framework as one made under the ADEA. *Robinson v. Ala. Cent. Credit Union*, 964 So. 2d 1225, 1228 (Ala. 2007). Therefore, this Court will not discuss each claim separately.

nondiscriminatory reason, the burden returns to the employee to prove that the employer's reason is a pretext for unlawful discrimination. *Id.* Stated another way, the employer's legitimate, nondiscriminatory reason for the adverse employment action destroys the presumption of discrimination but leaves the plaintiff an opportunity to prove his case through additional evidence of discrimination. *Kragor*, 702 F.3d at 1308 n.1.

### 1. Prima Facie Case

To establish a prima facie case of age discrimination, the plaintiff employee must demonstrate that (1) he was a member of the protected group between the age of forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which the plaintiff was discharged; and (4) he was qualified to do the job from which he was discharged. *Liebman*, 808 F.3d at 1298. The initial burden to demonstrate a prima facie case of discrimination is a low threshold for the plaintiff to meet. *See English v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 83 F. Supp. 3d 1271, 1282 (S.D. Ala. 2015).

No dispute exists that Roberts, who was sixty-two years old at the time of his termination, is entitled to the protections of the ADEA. *See* 29 U.S.C. § 631(a) (limiting the application of the ADEA to individuals forty years of age or older).

Further, both parties agree that Roberts suffered an adverse employment action because he was discharged from his position in March 2014. *See Liebman*, 808 F.3d at 1298 (firing qualifies as adverse employment action for purposes of ADEA). The employee who replaced Roberts following his termination was fifty years old, and this age difference satisfies the "substantially younger" prong even though Tavares is also a member of the protected class. *Id.* at 1299. Finally, Roberts had performed similar duties for the extent of his employment with CGM and possessed extensive experience in his field; indeed, CGM does not assert that Roberts was not qualified for the position from which he was discharged. *See id.* ("In assessing a plaintiff's qualification for a position, [this Court] examine[s] his skills and background."); *see also Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999) (plaintiff "discharged from a previously held position" need not show that he was qualified for that position). Roberts has thus presented sufficient evidence on each of the elements to establish a prima facie case of age discrimination.

      2. Legitimate, Nondiscriminatory Reason

The employer's burden to articulate a legitimate, nondiscriminatory reason for taking the adverse employment action against the plaintiff employee is sufficiently satisfied if the employer presents evidence that "raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Chapman v. AI*

*Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)). The presumption of discrimination is eliminated if the employer produces evidence that "would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Combs*, 106 F.3d at 1528 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981)) (emphasis deleted). An employer's good faith belief that the employee has violated the employer's policies may constitute evidence of a legitimate, nondiscriminatory reason for the employee's termination. *See Kragor*, 702 F.3d at 1309; *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("The inquiry of the ADEA is limited to whether [the decisionmakers] *believed* that [the employee] was guilty of harassment, and if so, whether this belief was the reason behind [the employee's] discharge.").

In response to Roberts's claim of age discrimination, CGM asserts that it terminated Roberts's employment due to the threatening statement he made at the February 2014 meeting. This statement, according to CGM, violated the company's harassment and workplace violence policies. CGM avers that its human resources team made the unanimous decision to discharge Roberts based on Rabadi's initial complaint to Richardson and Mayer's corroboration of Rabadi's account. Roberts does not challenge the decisionmakers' apparent belief, based on

this evidence, that he made the inappropriate statement. Indeed, even if the decisionmakers were mistaken in their belief, CGM was entitled to fire Roberts on that basis, as long as the belief was honest and reasonable.[5] *See Damon*, 196 F.3d at 1363 n.3 ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); *Elrod*, 939 F.2d at 1470; *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1454–53 (11th Cir. 1987) ("[I]f the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race' and the employer has not violated § 1981."). Because CGM has presented a legitimate, nondiscriminatory reason for Roberts's termination (i.e., violation of company policies), the presumption of unlawful discrimination is eliminated.

### 3. Pretext for Age Discrimination

The plaintiff may attack the employer's explanation for the adverse employment action "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Kragor*, 702 F.3d at

---

[5] Roberts appears to suggest that CGM's belief that he had made the inappropriate threat was not reasonable because, in his opinion, CGM failed to adequately investigate Rabadi's complaint. These arguments, however, are more appropriately considered as part of the pretext prong and will thus be addressed below.

1308 (quoting *Burdine*, 450 U.S. at 256). To do this, the plaintiff must "produce sufficient evidence to allow a reasonable finder of fact to conclude that the [employer's] articulated reasons [for the adverse employment action are] not believable." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (citing *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)). An employer's proffered reason might be unworthy of credence, for example, where the employee points out "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the explanation that have a basis in the record. *Id.* (quoting *Jackson*, 405 F.3d at 1289). The plaintiff employee's own "speculative testimony" about his employer's reasons, without evidence to support that inference, is insufficient to demonstrate pretext. *See Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006).

"Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. Neither the plaintiff nor this Court is permitted to "substitute [its] business judgment for that of the employer." *Id.* "To ultimately prevail, '[a] plaintiff must prove by a preponderance of the evidence . . . that age was the but-for cause of the challenged employ[ment] decision.'" *Mazzeo v. Color*

*Resolutions Int'l, LLC*, 746 F.3d 1264, 1270 (11th Cir. 2014) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)).

Roberts's principal argument[6] is that CGM failed to conduct a thorough investigation into Rabadi's complaint and instead relied only upon "the statement[s] of [Rabadi], whom [Roberts] had just criticized for work performance, and one other employee who gave two separate versions of events." Roberts asserts that he informed Richardson and Reeb that Sayers and Johnson were also present at the February 2014 meeting, but Richardson did not interview them because Rabadi "did not identify them as witnesses" in his initial complaint. CGM should have more closely scrutinized Rabadi's allegations, according to Roberts, because Roberts "had reprimanded [Rabadi] concerning his work performance at the meeting in question," which provided Rabadi with "a possible ulterior motive" for making the complaint. It is clear from Roberts's deposition testimony that he had problems with Rabadi—performance-related or otherwise—prior to the February 2014 meeting.

---

[6] Roberts made the argument in his EEOC charge and at his deposition that unlike other employees, he was not offered severance pay upon his termination. However, he has not responded to Defendants' arguments in favor of summary judgment on this ground and is therefore deemed to have abandoned it. *Clark v. City of Atlanta*, 544 F. App'x 848, 855 (11th Cir. 2013) (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)); *Resolution Trust Corp.*, 43 F.3d at 599 ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). "[A] party may not rely on his pleadings to avoid judgment against him." *Resolution Trust Corp.*, 43 F.3d at 599 (quoting *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.3d 641, 543 (11th Cir. 1986)).

However, even if Roberts's speculation about Rabadi's motives is correct, his arguments essentially challenge the wisdom of CGM's human resources team in investigating the incident and deciding to fire him. The evidence demonstrates that Richardson received a complaint, interviewed the witnesses named by the complainant, and reached a decision on that basis. This course of action is not patently unreasonable, and Roberts does not contest these facts—he believes that Rabadi did indeed make the complaint and that Mayer "backed [Rabadi] up." Rather, Roberts's arguments imply that CGM's human resources team based its conclusion on unreliable witnesses—the biased accuser and the employee who "changed his story." Had Richardson spoken with Sayers and Johnson, and had they told her that they did not hear Roberts make the statement,[7] Richardson and the human resources team still could have relied on the reports of Rabadi and Mayer in determining that Roberts violated company policy. Richardson's belief that Rabadi's account was credible could be utterly wrong, but there is no evidence that Richardson chose to believe Rabadi and Mayer and not Roberts as a result of Roberts's age. This—not the ultimate question of whether Roberts was in fact guilty of making the statement—is the proper inquiry for this Court in evaluating whether Roberts has demonstrated pretext. *See Elrod*, 939 F.2d at 1470 ("[The

---

[7] Aside from Roberts's own statements about what Sayers and Johnson would have told Richardson, there is no evidence in the record as to what the testimony of these two employees would reveal.

court] can assume for purposes of this opinion that the complaining employees interviewed by [the employer] were lying through their teeth. The inquiry of the ADEA is limited to whether [the decisionmakers] *believed* that [the plaintiff employee] was guilty of harassment, and if so, whether this belief was the reason behind [the employee's] discharge." (emphasis in original)).[8]

Here, there is no question that the decisionmakers believed—correctly or incorrectly—that Roberts made the inappropriate threat and that this was the reason for his discharge. Roberts himself concedes in his EEOC charge that CGM decided to terminate him "for employee harassment." To find pretext on the grounds that CGM's human resources employees could have done more is to engage in the prohibited practice of substituting this Court's business judgment for that of CGM. Furthermore, and most importantly, nothing about CGM's handling of the investigation suggests that Richardson or any of the other decisionmakers acted with discriminatory animus toward Roberts because of his age. *See Nix v. WLCY Radio/Rahall Communic'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) (reiterating the fact that an employer may discharge an employee for virtually any reason, "as

---

[8] Roberts asserts that *Elrod* is inapposite to the case at bar because the plaintiff employee admitted to engaging in sexual harassment. A more accurate characterization is that the plaintiff employee did not object to the accusations being leveled against him, but he nonetheless argued at trial that the accusations were false, much as Roberts does here. Even if the jury believed "that the allegations against [the plaintiff employee] were untrue," this was insufficient to meet the plaintiff employee's burden to show that his employer's belief in the truth of the allegations "was unworthy of credence." *Elrod*, 939 F.2d at 1471.

long as its action is not for a discriminatory reason"). Summary judgment is to be entered in favor of CGM on Roberts's ADEA and AADEA claims.

### B. Conversion

Roberts also contends that CGM unlawfully converted some of the property left in his Houston, Pennsylvania office at the time of his termination. He acknowledges that he did receive some of his personal items from CGM, but he claims that CGM retained other items, such as a bottle of champagne that Richardson admits she discarded because she was unable to ship it. The evidence in the record places Roberts's word against CGM's word, and this dispute of fact should be resolved by the jury.

As an initial matter, Roberts expressly brings his claim under Alabama common law, but CGM asserts that Pennsylvania law applies to Roberts's claim. It would appear that CGM is correct, as Roberts's physical office and the personal property that CGM allegedly converted were located in Pennsylvania. *See Atkins v. GE Capital Mortg. Servs., Inc.*, 993 F. Supp. 1406, 1417 n.8 (M.D. Ala. 1998) ("[T]he law of the state wherein the property was allegedly converted is applicable to Plaintiff's conversion claim . . . ."); *Ex parte U.S. Bank Nat. Ass'n*, 148 So. 3d 1060, 1069–70 (Ala. 2014) (explaining that law of state where injury occurred

governs tort claim). However, citing Fed. R. Civ. P. 12(b), Roberts contends that CGM has waived this argument by not including it in its answer. Presuming that Roberts construes CGM's argument that Pennsylvania law applies as an argument that Roberts has failed to state a claim under Fed. R. Civ. P. 12(b)(6), CGM has not waived the argument and may raise it even at trial. Fed. R. Civ. P. 12(h)(2).

Nonetheless, having granted summary judgment in favor of CGM on Roberts's federal claims, this Court has "dismissed all claims over which it has original jurisdiction." *See* 28 U.S.C. § 1367(c)(3). It therefore elects to decline to exercise supplemental jurisdiction over Roberts's state-law conversion claim. *Id.*; *see Murphy v. Fla. Keys Elec. Co-op. Ass'n*, 329 F.3d 1311, 1320 (11th Cir. 2003). Roberts's conversion claim is therefore due to be dismissed without prejudice so as to allow him to file the same in state court if appropriate.

## V. Conclusion

For the reasons stated above, CGM's motion for summary judgment (Doc. 18) is due to be GRANTED as to the ADEA and AADEA claims. Roberts's conversion claim is due to be DISMISSED WITHOUT PREJUDICE. A separate order consistent with this opinion will be entered.

**DONE** AND **ORDERED** ON JANUARY 5, 2017.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

186289